# United States Court of Appeals

## For the First Circuit

Nos. 01-2377
    01-2380
    01-2382

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE MOLINA-MARRERO,

Defendant, Appellant.

No. 01-2451

UNITED STATES OF AMERICA,

Appellee,

v.

RENE CORE-AYALA,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]
[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

---

Before

Lynch, <u>Circuit Judge</u>,
Coffin and Campbell, <u>Senior Circuit Judges</u>.

---

<u>William M. Palmer</u>, by Appointment of the Court, on brief for appellant Molina-Marrero.
<u>Raul S. Mariani Franco</u>, by Appointment of the Court, on brief for appellant Core-Ayala.
<u>H. S. Garcia</u>, United States Attorney, <u>Sonia I. Torres</u>, Assistant United States Attorney, <u>Thomas F. Klumper</u>, Assistant United States Attorney, on brief for appellee.

---

February 14, 2003

---

**COFFIN, <u>Senior Circuit Judge</u>**. These are two criminal appeals involving sentencing issues.

<u>Appellant Molina-Marrero</u>

Appellant Molina-Marrero pleaded guilty to counts in three indictments. All three involved appellant and a number of associates in robberies (of a bank, a car dealership, and a Loomis Fargo truck), the use of firearms, and the taking of money and vehicles. He was sentenced to 87 months of imprisonment on one count in each indictment to run concurrently, together with a five-year consecutive term on a second count in one indictment, and supervised release terms. A requirement of restitution was also imposed.

Appellant's sole argument on appeal focuses on the district court's refusal, without specific findings of fact, to grant a two-point downward adjustment based on his playing a minor role in the armored car robbery. We review the court's decision for clear error. <u>See</u> <u>United States</u> v. <u>Ortiz-Santiago</u>, 211 F.3d 146, 148-49 (1st Cir. 2000). The hurdle faced by appellant is to identify "evidence [that] overwhelmingly demonstrates that [he] played a part that makes him substantially less culpable than the average participant in the convicted offense." <u>United States</u> v. <u>Brandon</u>, 17 F.3d 409, 460 (1st Cir. 1994).

In this case, the Presentence Report (PSR) described a highly structured and meticulous conspiracy to rob a Loomis Fargo truck at

-2-

a branch of Banco Popular. The planning was done during the week before the event. No fewer than eight persons were involved. One provided a radio for use as a police scanner. Several vehicles carrying the conspirators drove to the vicinity of the bank to await arrival of the truck. Three began surveillance at a bus stop. Two carried pistols and one a semi-automatic rifle, which was later fired. Another began surveillance from a nearby hot dog cart. Appellant arrived and also began surveillance. Two donned masks and, with two others, confronted two truck guards, pointed a gun at the driver, disarmed a passenger guard, and took a bag of currency from the guards. The masked conspirators brandished a pistol and a rifle. Appellant had kept up his surveillance and, at the conclusion of the robbery, drove one of the getaway vehicles.

It is clear that the court was well within its discretion in viewing this portrayal as one in which each conspirator's assigned role – surveillance, confrontation, seizing currency, and driving getaway vehicles – was vital to the success of the enterprise, so that appellant could be deemed substantially as culpable as his partners.

We have noted that the court's articulated reasons for imposing a particular sentence, as required by 18 U.S.C. § 3553(c), should be supported by "'reasonably specific findings,'" United States v. Van, 87 F.3d 1, 2 (1st Cir. 1996) (citation omitted). We have found "minimal compliance" with this obligation when the court

relied upon a PSR that "provided a sufficient basis for meaningful appellate review." Id. at 2-3; see also United States v. Cruz, 981 F.2d 613, 617-18 (1st Cir. 1992).

It is clear from the sentencing transcript that the court was well aware of the circumstances of the robbery as described in the PSR. Most of the colloquy between the court and counsel concerned the imposition of added points to appellant's sentence based on his partners' brandishing of weapons and the government's refusal to recognize the extent of appellant's cooperation. Only one comment was directed to appellant's role in the offense.

The court, in its response to the arguments of counsel, dealt in detail with appellant's remarks concerning brandishing, pointing out that the interrelated roles indicated that appellant shared the same intent as his co-defendants. Then it added that appellant's "participation is not that of a minor participant and the court will not grant him a two level decrease." On this record, we hold that the court committed no reversible error.

### Appellant Core-Ayala

The Loomis Fargo indictment is the one in which appellant Core-Ayala pleaded guilty. The two matters at issue are Count Two, charging robbery plus actions and threats of force, including threats of shooting others to death, and Count Three, using and carrying firearms in connection with the robbery. Appellant was described in the PSR as donning a black mask, carrying a .38

caliber pistol, confronting two Loomis truck guards outside a bank, pointing a gun at the driver, disarming the passenger guard, and brandishing his pistol.

Although the offense level prescribed for the robbery in the Sentencing Guidelines was 20, the court, noting the existence of prior convictions for crimes of violence, in accordance with Guideline § 4B1.1, imposed a sentence based on the much higher level for career offenders, 32, and a higher Criminal History category of VI. After a reduction of 3 levels for acceptance of responsibility, the result was a total offense level of 29. The appropriate range of sentence was 151 to 188 months. The court imposed a sentence on Count Two of 151 months and the mandatory consecutive five-year sentence on Count Three, together with ancillary provisions regarding supervised release, restitution, and fines.

Appellant raises two issues: whether the court erred in applying the career offender sentence enhancement and whether his plea of guilty was knowing and voluntary. Since, however, the Plea Agreement accompanying appellant's plea included a waiver of any right to appeal the sentence imposed pursuant to that agreement, the controlling question is whether appellant's plea was knowing and voluntary.

We apply the three-point inquiry we articulated in United States v. Teeter, 257 F.3d 14, 24-25 (1st Cir. 2001). We assess

the clarity and scope of the waiver in the Plea Agreement. We similarly scrutinize the change of plea hearing transcript, focusing on the defendant's knowledge and volition. Finally, a miscarriage of justice, including a plain error in sentencing, may be a basis for refusing to honor the waiver.

First, the Plea Agreement. It began with a description of the charges in Counts Two and Three, the maximum penalty of the former being twenty years and the mandatory consecutive imprisonment term under the latter being five years. Subsequent paragraphs affirmed appellant's awareness of the wide discretion of the court concerning sentencing guideline calculations or stipulations; the possibility of the court, under the Sentencing Guidelines, ordering a fine; and his awareness that his sentence would be within the judge's discretion acting under the Guidelines, up to the statutory maxima. If a maximum sentence were imposed, this would not justify a withdrawal of a guilty plea. Other provisions attested that appellant was satisfied with his attorney and with the statement of facts concerning the offenses set forth in the Agreement. The Agreement also affirmed that it represented the complete agreement between the government and appellant, that the government had not made any other promises or representations, and that there were no other terms or conditions. As noted, appellant also waived any right to appeal.

Central to appellant's claim of involuntariness is Paragraph Seven. This sets forth an agreement between the government and defendant that the Guidelines indicated a base offense level for Count Two of 20; that defendant's acceptance of responsibility lowered this to 17; that this level and a Criminal History Category of III yielded a sentencing range of 30 to 37 months. The United States agreed to recommend 30 months. In fact, the government did recommend 30 months, unavailingly. Appellant claims that his attorney told him that the government's recommended sentence included his past convictions and that neither his attorney nor the government had told him that his prior criminal record "made the agreed stipulation virtually worthless," and was merely a recommendation to the court.

On its face, the Plea Agreement states exactly the non-binding nature of the government's recommendation and the unrestricted discretion, within the Guidelines, of the court. If there were any doubt about this, it would be erased by a reading of the transcript of the hearing on the change of plea. This was a lengthy and meticulous interrogation by the court, addressed to appellant's understanding of the indictment, the specific offense facts, and the constitutional rights that the plea was surrendering. Very specifically, in addressing Paragraph Seven containing the government's recommendation, the court pointed out that it would make its own review and, after the probation officer reported,

determine if appellant fell in a different Criminal History category, and that a higher category would result in a greater sentence. Appellant affirmatively indicated his understanding.

The requirements of Fed. R. Crim. P. 11 were faithfully complied with. The whole point of striving for clear and specific plea agreements and meticulous and comprehensive inquiries at change of plea hearings would be missed if such proceedings could be plummeted into further litigation by claims that attorneys did not communicate with their clients or misinformed them. As the court observed in United States v. Foster, 68 F.3d 86 (4th Cir. 1995), any misinformation a defendant received from his attorney can be corrected by proper information from the court at the Rule 11 hearing; the court noted that "'the criminal justice system must be able to rely on the subsequent dialogue between the court and the defendant,'" id. at 88(citation omitted). Only if there were some reliable indicia of such misinformation or lack of vital communication could we say that a miscarriage of justice had trumped procedural regularity.

Such is not the instant case. Appellant charges error in applying the career offender guidelines because of a lack of notice of this possibility, a failure to meet a heightened burden of proof, and excessive remoteness of the prior convictions.

As for the basic due process requirement of "'reasonable notice and an opportunity to be heard regarding the possibility of

an enhanced sentence for recidivism,'" Damerville v. United States, 197 F.3d 287, 290 (7th Cir. 1999) (citation omitted); see also United States v. Craveiro, 907 F.2d 260, 264 (1st Cir. 1990), two copies of the PSR were sent to appellant's then counsel on May 18, 2000, fourteen months before sentencing. This report made perfectly clear that on March 18, 1985, and on July 12, 1989, appellant had pleaded guilty to aggravated assault in the former case and attempted murder in the latter, receiving prison terms of three and five years respectively. These elevated appellant's criminal history as a career offender under Guideline § 4B1.1 to Criminal Category VI. While a subsequent attorney for appellant did not receive a copy until April 19, 2001, appellant not only was apparently given the PSR before, but also exercised an opportunity to note his objections.

Moreover, the nature of appellant's objections to the PSR effectively answers appellant's challenge to the sufficiency of the evidence of prior convictions. For appellant's only attack on that evidence was not the sufficiency of proof but that the convictions were more than ten years old. This fact leads directly to appellant's final basis for challenge, that of remoteness.[1] Under Guidelines §§ 4B1.1 and 4A1.2(e), sentences over one year and one

---

[1]Appellant seeks belatedly in his appellate brief to challenge his 1985 conviction for attempted assault on the ground that there was no proof that he had actually served time in prison. This argument, of course, comes far too late in the day.

month for crimes of violence may be counted as prior convictions if the crimes were committed within fifteen years of the crime currently under review.  Both crimes noted above meet these requirements.

We note finally that we are lacking any basis for concluding that appellant would not have pleaded guilty and would have fared better had he been made aware of the likelihood of being assigned career offender status.  As it turned out, the court not only made his federal sentence run concurrently with a state sentence, but also sentenced at the bottom of the applicable range.  And appellant's own final assessment in his objections to the PSR was less than compelling.  His conclusion was that "this [Criminal History III] misrepresentation by the Government could have triggered a wrong decision to plea [sic] by defendant."  Under the circumstances we have discussed, we conclude that appellant has not reached the high threshold of demonstrating a miscarriage of justice.  In short, we find no basis for concluding that appellant's plea of guilty was other than knowing and voluntary.

Accordingly, for the above reasons, both judgments are AFFIRMED.