# United States Court of Appeals
## For the First Circuit

No. 17-1490

UNITED STATES OF AMERICA,

Appellee,

v.

MARIO LEE, a/k/a Mo,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Thompson, Circuit Judge,
Souter, Associate Justice,*
and Selya, Circuit Judge.

Bruce M. Merrill on brief for defendant-appellant.
Halsey B. Frank, United States Attorney, and Benjamin M. Block, Assistant United States Attorney, on brief for appellee.

June 18, 2018

---

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**THOMPSON**, **Circuit Judge**.  This appeal comes from a district court's imposition of a 218-month sentence on Mario Lee for conspiracy to distribute and possession with intent to distribute 100 grams or more of a mixture or substance containing heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Lee only attacks his sentence as procedurally unreasonable.  Concluding, as we do, that the district court did not commit any error, we affirm.

### A. Background[1]

On February 7, 2014, Mario Lee was released from prison in New York, having been convicted for selling crack cocaine to an undercover police officer.  Within months of his release, federal and state law enforcement in Maine discovered that Lee was participating in an ongoing conspiracy to distribute heroin there.  Lee would obtain heroin from outside Maine and would transport it back to Maine to be distributed by himself and others.  On September 3, 2015, Lee was arrested.  He was charged with four counts of distribution of heroin, and one count of conspiracy to distribute heroin.  Facing a possible life sentence, Lee pled guilty to one count of conspiracy to distribute and possession with intent to distribute 100 grams or more of a mixture or

---

[1] We draw these facts, where relevant, from the record before us on appeal, in particular the pre-sentence report (PSR), the criminal complaint to which Lee pled guilty, the plea hearing transcript, the sentencing transcript, and the parties' sentencing memoranda and exhibits before the district court.  See United States v. Santiago-Serrano, 598 F. App'x 17, 18 (1st Cir. 2015).

substance containing heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  The plea agreement struck by the government and Lee, due to Lee's undisputed career offender status under U.S.S.G. § 4B1.1, had the effect of setting his guideline range at 120 to 240 months.

At Lee's sentencing, and in its sentencing memorandum, the government presented and summarized evidence from its investigation to support a 1.3 kilogram drug quantity determination, as recommended by the PSR.  This evidence included the grand jury testimony or interviews of nine witnesses who connected Lee to large quantities of heroin.[2]  Lee objected to the drug quantity estimates in the PSR based on the government's witness statements.[3]  Unlike other cases where drug quantity comes up as an issue, in this case the district court noted, and counsel for the government and Lee agreed, that Lee's PSR objections would not affect the guidelines calculations because Lee's undisputed status as a career offender under U.S.S.G. § 4B1.1 superseded those considerations.  However, the district court said that drug

---

[2] These witnesses are identified in the record as: Source of Information (SI)-1, -2, -3, -4, -5, -5H (husband of SI-5), -6, -7, and -8.

[3] We note that below Lee also disputed the PSR's recommendation of an enhancement for his role in the conspiracy. The PSR recommended that he receive a four-level enhancement as an organizer or leader of criminal activity involving five or more participants or that was otherwise extensive under U.S.S.G. § 3B1.1(a). As he does not challenge the district court's imposition of this enhancement on appeal, we say no more.

quantity could be relevant to the actual sentence imposed under the 18 U.S.C. § 3553(a) factors.

To hear Lee tell it, the witnesses' statements, which were not subject to cross-examination in the grand jury or the prosecutor's office, had inconsistencies. These inconsistencies all amounted to arguing either that the witnesses exaggerated the period of time they were acquainted with Lee when he was selling heroin in Maine or the amount of heroin the witnesses knew Lee had possessed. Lee concluded that that made them too unreliable to be considered. While noting these discrepancies, the district court found that the witnesses' statements were credible, corroborating locations, associates, and drugs connected to Lee, and adopted the PSR's recommended 1.3 kilograms as the drug quantity. The district court considered the drug quantity in imposing Lee's 218-month sentence rather than a more lenient one.

## B. Discussion

On appeal, Lee complains only about the drug quantity the district court attributed to him. According to Lee, SI-1, SI-2, SI-3, SI-4, and SI-5, whose testimony supported the PSR's drug quantity recommendation, were inherently unreliable. Even worse, Lee says that considering these unreliable statements would risk "double counting," incorrectly ballooning the drug amounts attributable to him by considering the testimony of multiple witnesses that could relate to the same drugs. To Lee, considering

- 4 -

this evidence despite the shortcomings he identified was procedural sentencing error. As a part of his argument that the witness statements are unreliable, Lee believes that the witness statements are especially so because they are out-of-court statements from either grand jury testimony or proffer interviews with the government. Thus, Lee concludes, if the district court had required the government to produce these witnesses for live testimony at sentencing, as he requested below, the district court could not have possibly believed them.

We must ensure that the sentence imposed by the district court was "procedurally sound." United States v. Dávila-González, 595 F.3d 42, 47 (1st Cir. 2010) (citing United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). A district court commits a procedural error in sentencing if it "fail[s] to calculate (or improperly calculate[s]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence." Gall v. United States, 552 U.S. 38, 51 (2007). When making a drug quantity finding, the sentencing court's responsibility is to "make reasonable estimates of drug quantities, provided they are supported by a preponderance of the evidence." United States v. Mills, 710 F.3d 5, 15 (1st Cir. 2013). We review those estimates "deferentially, reversing only for clear error." Id. We will only find clear error when

our review of the whole record "form[s] a strong, unyielding belief that a mistake has been made." Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990).

Evidence supporting the drug quantity determination may be considered regardless of its admissibility at trial, so long as it has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). The sentencing court has a lot of discretion in deciding what evidence is reliable enough to be considered for sentencing purposes. See Mills, 710 F.3d at 15-16; United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010); United States v. Green, 426 F.3d 64, 66 (1st Cir. 2005).

Having laid out our deferential review of drug quantity findings, and the sentencing court's broad discretion in reviewing the evidence before it at the sentencing hearing, we start with Lee's argument that the witness statements, as out-of-court statements, are inherently less reliable for sentencing purposes, and that the government should have been compelled to produce the witnesses for cross examination. Lee's argument is way off base. A defendant's rights under the Confrontation Clause do not attach during sentencing. United States v. Díaz-Arias, 717 F.3d 1, 26-27 (1st Cir. 2013). And for a while now, we have held that a sentencing court may consider hearsay statements of confidential informants if they otherwise show sufficient indicia of reliability. See Green, 426 F.3d at 67; United States v. Tardiff,

- 6 -

969 F.2d 1283, 1287 (1st Cir. 1992), <u>superseded by amendment to U.S.S.G. on other grounds</u>, U.S.S.G. § 3B1.3, <u>as recognized in</u> <u>United States</u> v. <u>Reccko</u>, 151 F.3d 29, 33 (1st Cir. 1998).  We see no error here.[4]

The witnesses' statements concerning Lee's heroin distribution were detailed, internally consistent, and mutually corroborative in important ways.  In particular, the statements were mutually corroborative about the specific locations where he stashed and sold heroin, including multiple descriptions of a trailer on Essex Street in Bangor, Maine, restaurants in Bangor such as the "Sea Dog" and "Carolina's," a residence at Maxim Court in Bangor, and a residence in Old Town, Maine.  Multiple witnesses also corroborated the names of Lee's associates and "runners" (drug deliverers).  We have already held that a sentencing court can rely on evidence with indicia like this.  <u>See</u> <u>Green</u>, 426 F.3d at

---

[4] Lee's reliance on <u>United States</u> v. <u>Carl</u>, 593 F.3d 115 (1st Cir. 2010), does not help him escape the clear precedent permitting the use of hearsay statements, including confidential ones.  While in <u>Carl</u>, the statements of drug addicts who bought crack cocaine from the defendant were subject to cross-examination at trial before being used for drug quantity purposes at sentencing, nothing in that opinion would suggest that cross-examination at trial is dispositive or even considered in our deferential review of the sentencing court.  <u>See</u> <u>id.</u> at 122-23.  As long as the information the government uses is reliable, there is no presumption or preference for live testimony subject to cross-examination rather than any other.  <u>See</u> <u>Mills</u>, 710 F.3d at 15-16 ("[T]he court can consider all kinds of relevant information regardless of admissibility at trial . . . provided it has 'sufficient indicia of reliability to support its probable accuracy.'" (quoting U.S.S.G. § 6A1.3(a)).

67 (affirming sentencing court's reliance on statements corroborating names of associates and locations used by defendant). Some witnesses also personally witnessed Lee possessing and distributing heroin himself. We have affirmed reliance on evidence showing far less. See United States v. Zapata, 589 F.3d 475, 485-86 (1st Cir. 2009) (affirming drug quantity on basis of intercepted phone calls discussing drug quantity in code when defendant was never found in possession of drugs). The alleged inconsistencies Lee identifies – all relating to the witnesses' knowledge of the amount of time Lee was in Maine or how many drugs he was connected to – are not enough to torpedo the district court's findings. In fact, some of the inconsistencies are just mistakes that the witness corrected later.[5] It is not clear error that the sentencing court weighed other indicia of reliability and found them to be more significant. See Mills, 710 F.3d at 16 & n.4.

Any possibility of a reversible error due to witness reliability or double counting is negated even more by the

---

[5] The insignificance of the flaws Lee picks out of the testimony is made even clearer by this example. SI-1 testified that she met Lee in 2012 or 2013, which, as Lee seizes upon, would have been impossible as he was incarcerated in New York at that time. As the government points out, SI-1 corrected this belief later in her testimony, amending that she had dealt with Lee for eighteen months to two years. Inconsistencies like these do not compete in weight or relevance with the factors the district court found reliable in the witness testimony, and that we find reliable here.

narrowness of the drug quantity calculation. In an act of lenity to Lee's benefit, the PSR's 1.3 kilogram drug quantity accounted for the possibility of any exaggerations or double counting by the witnesses in its estimate. The PSR: (i) only considered a six-month window of SI-1's transactions with Lee, accounting for when Lee was released from prison in New York and when it was alleged he was not in Maine for eight months; (ii) did not consider the suitcases of heroin Lee's cousin delivered to him as corroborated by SI-4 in order to avoid double counting; (iii) only considered a six-month window of transactions corroborated by SI-5, even reducing the drug quantity per transaction, to ensure lenity; (iv) for no stated reason but to Lee's benefit, did not consider any drug quantities corroborated by SI-6, SI-7, or SI-8; and (v) discounted the "bundles" of heroin Lee sold to represent .25 grams each in the calculation, rather than 1 gram as multiple witnesses testified. In sum, the sentencing court adopted the PSR's "modest and defensible assumptions" to avoid precisely the errors Lee claims were made. Cintrón-Echautegui, 604 F.3d at 7. The district court's reliance on the witness statements and its adoption of a narrowly tailored drug quantity determination supported by that evidence were reasonable. We see no clear error.

## C. Conclusion

For the reasons explained above, the sentence is **affirmed.**