# United States Court of Appeals
## For the First Circuit

No. 22-1181

UNITED STATES OF AMERICA,

Appellee,

v.

MIGUEL F. RAMIREZ-AYALA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Gelpí and Montecalvo, Circuit Judges.

Jose B. Velez Goveo and Velez & Velez Law Office on brief for
appellant.

Maarja T. Luhtaru, Assistant United States Attorney, W.
Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, on brief for
appellee.

May 9, 2024

**GELPÍ**, **Circuit Judge**.    Defendant-Appellant Miguel Ramirez-Ayala ("Ramirez-Ayala") pled guilty to illegally possessing firearms and controlled substances in 2015. Having served his federal prison sentence for these crimes, he commenced a three-year supervised-release term. But within a year, Ramirez-Ayala violated his supervised-release conditions by again possessing controlled substances and a firearm, as well as committing other violations. Following a revocation sentence of eighteen months, he began another supervised-release term. During this second supervised-release term, Ramirez-Ayala committed multiple violations, including drug and firearm possession, and absconded from police in a highspeed car chase. In 2021, he pled guilty to these most recent drug and firearm possession charges, and another round of revocation proceedings ensued. Ultimately, Ramirez-Ayala was sentenced to twenty-four months' imprisonment -- the maximum revocation sentence -- to be served consecutively to his new conviction.

He now appeals, contending that the district court sentenced him in a procedurally and substantively unreasonable manner. Discerning no such error, we affirm.

We begin with the first offense underlying Ramirez-Ayala's third term of supervised release (hereinafter, "15-277"). On March 31, 2015, Puerto Rico Police Department ("PRPD") officers executed a search warrant at a residence in Bayamón, Puerto Rico. Inside, they arrested Ramirez-Ayala after they seized multiple rounds of ammunition, drugs, and U.S. currency. Ramirez-Ayala was then indicted on April 16, 2015, for possession of ammunition as a felon, 18 U.S.C. § 922(g)(1), and possession of a controlled substance with intent to distribute, 21 U.S.C. § 841.[2] He pled guilty to both counts on September 30, 2015, and the district court sentenced him to time served on August 25, 2017, followed by a three-year term of supervised release. As conditions of supervised release, the district court ordered Ramirez-Ayala to obey the directives of his probation

---

[1] We draw these facts from the record on appeal, including "the uncontested portions of the pre-sentence report[s]" prepared for Ramirez-Ayala's convictions, the plea agreement, and the transcripts for the sentencing and revocation hearings. United States v. Berrios-Miranda, 919 F.3d 76, 77 n.1 (1st Cir. 2019) (first citing United States v. Lee, 892 F.3d 488, 490 n.1 (1st Cir. 2018); and then citing United States v. Talladino, 38 F.3d 1255, 1258 (1st Cir. 1994)); see, e.g., United States v. Sierra-Jiménez, 93 F.4th 565, 567 (1st Cir. 2024).

[2] Ramirez-Ayala was also indicted for another count of possession of a controlled substance with intent to distribute, 21 U.S.C. § 841, that was eventually dropped pursuant to the plea agreement.

officer, participate in a mental health treatment program, and not possess or use a controlled substance.

Ramirez-Ayala violated those conditions. On April 25, 2018, the probation officer filed a motion requesting that the district court summon Ramirez-Ayala to answer for ignoring his instructions, refusing to show up to treatment sessions, and unlawfully using marijuana and cocaine. At the revocation hearing, the district court found that Ramirez-Ayala violated those conditions, revoked his supervised release, and sentenced him to four months of home detention. At this point, Ramirez-Ayala had twenty-six months and four days remaining on his supervised-release term in 15-277.

In June and July 2018, Ramirez-Ayala violated his home detention conditions by repeatedly leaving his home without prior authorization. On August 15, 2018, his probation officer reported these violations to the district court and requested that the court extend Ramirez-Ayala's home detention term by two months and change his conditions to include home incarceration. The district court approved the probation officer's request on the same day.

Nevertheless, Ramirez-Ayala committed his second violation a few months later. On April 9, 2019, his probation officer received information from the PRPD to the effect that the state filed two criminal complaints against him for drug and firearm possession. In reporting this violation to the district court, the probation officer

- 4 -

summarized that the PRPD searched Ramirez-Ayala's residence and discovered marijuana, buprenorphine strips, and drug paraphernalia. And when Ramirez-Ayala saw the police searching his home, he fled the scene and eluded them until he was brought before the district court to answer for his violations. On February 6, 2020, the district court revoked Ramirez-Ayala's supervised release based on, inter alia, incurring new criminal charges in state court, possessing illegal narcotics, and possessing a firearm. Ramirez-Ayala was sentenced to eighteen months' imprisonment, followed by two years of supervised release.

We turn lastly to the events underlying Ramirez-Ayala's third violation, again involving possession of a firearm, after he was released from imprisonment in August 2020. On April 29, 2021, someone carjacked and robbed the driver of a Kia Soul at gunpoint in Bayamón. PRPD officers, after receiving a tip that the Kia Soul was seen at a toll on Highway 22, spotted the vehicle and ordered the driver -- Ramirez-Ayala -- to stop. He did not. Instead, he led PRPD officers on a high-speed chase through the area, crashed his car into several other vehicles, and fled on foot, not before tossing a bag containing a pistol and ammunition from the vehicle. He did not get far before the officers apprehended him.

After arresting Ramirez-Ayala, the PRPD officers discovered pictures and a video of him wielding a rifle and a

different pistol than the one that was found in his tossed bag. He was indicted on May 19, 2021, and ultimately charged in a superseding indictment on August 25, 2021, with two counts of possessing a firearm and ammunition as a felon, 18 U.S.C. § 922(g)(1).

This new arrest triggered revocation proceedings in 15-277. The probation officer filed a motion to that effect, listing Ramirez-Ayala's new charges. The motion added that Ramirez-Ayala tested positive for narcotics while on supervised release, namely, buprenorphine on August 24, 2020, and cannabinoids on October 5, 2020, and March 5, 2021.

Meanwhile, in his most recent firearm possession case, Ramirez-Ayala pled guilty to both counts of the indictment, pursuant to a straight plea in October 2021. The probation officer prepared a Presentence Investigation Report ("PSR"), listing not only the litany of supervised-release violations in 15-277 and offense conduct in the new case, but also his recent positive drug tests. Ramirez-Ayala did not object to the contents of the PSR.

On February 15, 2022, the district court held Ramirez-Ayala's sentencing and revocation hearings back-to-back.[3] His counsel asked the district court to recognize that he was

---

[3] As Ramirez-Ayala mentions in his brief, he "impliedly admitted" that he "violated his condition of supervised release" in 15-277 with his conviction in the new case.

repentant and to "take into account all his life. It's right there in the PSR." After hearing from Ramirez-Ayala, his counsel, and the government, the district court sentenced him to the statutory maximum -- 120 months' imprisonment on each count, for which he did not appeal, to run concurrently and followed by three years of supervised release. Before doing so, the district court noted that it had considered the PSR.

Turning to Ramirez-Ayala's revocation, his counsel requested that he be sentenced to time served. The government, in turn, argued for twenty-four months' imprisonment -- the statutory maximum, to run consecutively with his new term of imprisonment -- based on Ramirez-Ayala's criminal history and string of violations. The government emphasized that he squandered the "multiple opportunities" he received with "gentle disposition[s]" on his prior revocation sentences. Ramirez-Ayala's counsel responded that this was too harsh and that 120 months was "enough," so if not time served, his counsel requested that Ramirez-Ayala "at least . . . be sentenced to the revocation concurrently with the previous sentence of 120 months."

The district court found that Ramirez-Ayala violated his supervised-release conditions. In doing so, the district court pointed to his guilty plea in the new case and his recent positive drug tests. The district court calculated his advisory sentencing range -- fifteen to twenty-one months' imprisonment, based on

U.S.S.G. §§ 7B1.1(a)(1), 7B1.4(a), and a Criminal History category II -- and acknowledged that, at most, Ramirez-Ayala could receive twenty-four months' imprisonment for committing a Class C felony.

The district court then considered the relevant 18 U.S.C. § 3553(a) factors incorporated into 18 U.S.C. § 3583. It noted "the seriousness of [Ramirez-Ayala's] violations[,]" that this was his "third" violation, that he pled guilty to "new criminal behavior" featuring "similar conduct to his previous revocation[,]" and that he used "buprenorphine and marijuana, which shows total disregard of his supervised release conditions, the law, his safety, the safety of the community, and the Court." And so, the district court sentenced Ramirez-Ayala to twenty-four months' imprisonment, to run consecutively with his sentence in the new case. The district court emphasized that this was "[t]o reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense,[4] afford adequate deterrence, and to protect the public," and concluded that this

---

[4] Although Ramirez-Ayala does not raise the issue, the district court's recitation of the § 3553(a) factors which Congress did not insert into § 3583(e) -- "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" -- is not plain error. See United States v. Tanco-Pizarro, 892 F.3d 472, 479-81 (1st Cir. 2018) (explicating why, under our caselaw, a district court did not plainly err when it considered all pertinent § 3553(a) factors in revoking the defendant's supervised release under § 3583(e)).

sentence would be sufficient but not greater than necessary. This appeal[5] followed.

## II. DISCUSSION

### A. Standard of Review

"Where challenges are to the procedural and substantive reasonableness of a sentence, our review process is bifurcated: we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Reyes-Torres, 979 F.3d 1, 6-7 (1st Cir. 2020) (internal quotation marks and alteration omitted) (quoting United States v. Sayer, 916 F.3d 32, 37 (1st Cir. 2019)). "When assessing the procedural reasonableness of a sentence," we

_____

[5] Ramirez-Ayala devotes much of his brief to arguing why his filing was timely, even though he filed his notice of appeal outside of the fourteen-day window under Federal Rule of Appellate Procedure 4(b)(1)(A)(i). But the government believes that the appeal is timely, even though the judgment of conviction was entered on February 15, 2022, and Ramirez-Ayala filed his notice of appeal on March 4, 2022 -- seventeen days later. We need not fixate on this arithmetical impasse, however. "Rule 4(b)'s time limits are not mandatory and jurisdictional in the absence of a timely objection from the government," and the government waived the issue. United States v. Reyes-Santiago, 804 F.3d 453, 458-60 (1st Cir. 2015) (internal quotation marks omitted) (holding that the government waived its Rule 4 challenge where it implied in its opening brief that the defendant's notice of appeal was timely). Moreover, "because we find that [Ramirez-Ayala's] appeal fails on the merits, we may assume timeliness arguendo and indeed do so here." United States v. Vázquez-Rosario, 45 F.4th 565, 569 (1st Cir. 2022) (first citing United States v. Texeira-Nieves, 23 F.4th 48, 52-53 (1st Cir. 2022); then citing Tacuri-Tacuri v. Garland, 998 F.3d 466, 472 (1st Cir. 2021); and then citing United States v. Norman, 458 F. App'x 105, 107 n.5 (3d Cir. 2012)).

- 9 -

consider de novo "the sentencing court's interpretation and application of the sentencing guidelines and assay the court's factfinding for clear error." United States v. Cortés-Medina, 819 F.3d 566, 569 (1st Cir. 2016) (citing United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013)).

Ramirez-Ayala argued for a shorter sentence at the revocation hearing, so we review that preserved challenge for an abuse of discretion. See United States v. Colón-De Jesús, 85 F.4th 15, 25-26 (1st Cir. 2023). Likewise, as Ramirez-Ayala concedes, he did not object to the district court's findings as to his alleged use of marijuana and buprenorphine, so that procedural argument is subject to plain-error review. See id. at 20-21.

"To survive plain-error review and merit resentencing, a defendant must make four showings: (1) an error occurred, (2) that was clear or obvious, (3) that affected his substantial rights, and (4) that seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. at 21 (quoting United States v. Millán-Isaac, 749 F.3d 57, 66 (1st Cir. 2014)). We acknowledge that "[t]he plain-error bar for challenging a district court's factual findings is especially high." United States v. González-Andino, 58 F.4th 563, 568 (1st Cir. 2023). "[I]f an error pressed by the appellant turns on a factual finding [he] neglected to ask the district court to make, the error cannot be clear or obvious unless he shows that the desired factual

- 10 -

finding is the only one rationally supported by the record below." Id. (alterations in original) (internal quotation marks omitted) (quoting United States v. Takesian, 945 F.3d 553, 563 (1st Cir. 2019)). As for an abuse of discretion, it "occurs when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales." United States v. Irizarry-Sisco, 87 F.4th 38, 44 (1st Cir. 2023) (quoting United States v. Taylor, 848 F.3d 476, 484 (1st Cir. 2017)).

### B. Procedural Reasonableness

Our first task is to "ensure that the district court did not commit any 'significant procedural error' to arrive at a sentence." United States v. Flores-Quiñones, 985 F.3d 128, 134 (1st Cir. 2021) (quoting Sayer, 916 F.3d at 37). As relevant here, a "significant procedural error" includes "selecting a sentence based on clearly erroneous facts." Gall v. United States, 552 U.S. 38, 51 (2007).

Ramirez-Ayala contends that the district court's finding that he "admitted or that the government had proved . . . that he used or tested positive to buprenorphine and marijuana" was clearly erroneous. He perceives only silence in the record on whether he tested positive for either substance, highlighting that only the "bare allegations" in the supervised release violation petition

supported this conclusion.  He thus concludes that this crucial finding, which the district court factored heavily into its upward variance, was not supported by a preponderance of the evidence.

"[F]actual findings made at sentencing must be supported by a preponderance of the evidence." Colón-De Jesús, 85 F.4th at 21 (quoting United States v. Rivera-Ruiz, 43 F.4th 172, 181 (1st Cir. 2022)).  In making these findings, sentencing courts may depend upon any "relevant information regardless of admissibility at trial . . . provided it has 'sufficient indicia of reliability to support its probable accuracy.'"  Lee, 892 F.3d at 492 n.4 (quoting United States v. Mills, 710 F.3d 5, 15-16 (1st Cir. 2013)).  Thus, a "sentencing court 'may accept any undisputed portion of the [PSR] as a finding of fact[,]'" United States v. González, 857 F.3d 46, 62 (1st Cir. 2017) (first alteration in original) (quoting Fed. R. Crim. P. 32(i)(3)(A)), for "generally, a PSR bears sufficient indicia of reliability." United States v. Díaz-Rivera, 957 F.3d 20, 27 (1st Cir. 2020) (quoting United States v. Rondón-García, 886 F.3d 14, 25 (1st Cir. 2018)); see also Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact . . . ."); Colón-De Jesús, 85 F.4th at 22 (explaining that "a district court does not err by relying on unobjected-to portions of a PSR at sentencing").  After all, the parties must timely object to a PSR, see Fed. R. Crim. P. 32(f),

- 12 -

thus we recognize that, absent an objection, "[t]here is no reason . . . to doubt that" the conduct the PSR describes "occurred." United States v. Tabares, 951 F.2d 405, 411 (1st Cir. 1991); see, e.g., Rivera-Ruiz, 43 F.4th at 184-85.

With that in mind, Ramirez-Ayala does not show clear or obvious error. Contrary to his portrayal, the PSR for his new case recited the positive drug tests upon which the district court relied, and to which he never objected below.[6] Thus, the PSR bore "sufficient indicia of reliability" without an objection to the contrary below. See, e.g., Colón-De Jesús, 85 F.4th at 22; United States v. Portell-Márquez, 59 F.4th 533, 538 (1st Cir. 2023); Tabares, 951 F.2d at 411. And, as the district court expressed in the sentencing hearing just moments before the revocation hearing, it so relied on this dependable information. Even Ramirez-Ayala acknowledged the PSR's reliability when he urged the district court to consider it in crafting his sentence. See Colón-De Jesús, 85 F.4th at 22 ("In fact, Colón referenced the PSR multiple times in support of his own argument for a more lenient sentence." (emphasis

---

[6] The government characterizes Ramirez-Ayala's failure to object to the PSR as a waiver. But "[w]here a defendant's claim would fail even if reviewed for plain error, we have often declined to decide whether the defendant's failure to raise the issue below constituted waiver or mere forfeiture." United States v. Williams, 48 F.4th 1, 5 (1st Cir. 2022) (quoting United States v. Acevedo-Sueros, 826 F.3d 21, 24 (1st Cir. 2016)); see Severino-Pacheco, 911 F.3d at 20 n.5; United States v. Gaffney-Kessell, 772 F.3d 97, 100 (1st Cir. 2014). Thus, we need not delve into whether Ramirez-Ayala waived this issue.

- 13 -

omitted)).  Taken together, the PSR's reiteration of his positive drug tests, his failure to object below, and his reliance on the PSR otherwise in the proceedings below show that his conclusion is not "the only one rationally supported by the record below." González-Andino, 58 F.4th at 568; cf. United States v. Morales-Cortijo, 65 F.4th 30, 34–35 (1st Cir. 2023) (explaining that the appellant's failure to object to facts described in the PSR meant that there was no plain error in the district court drawing conclusions from those facts).[7]

Thus, Ramirez-Ayala's procedural-reasonableness argument falters on plain-error review.

### C. Substantive Reasonableness

Next, Ramirez-Ayala targets the upward variance as substantively unreasonable.  He argues principally that the district court did not offer a worthy justification that accounted for his individual characteristics and circumstances, noting that it lacked a "plausible explanation" for a twenty-four-month sentence.  Accordingly, we ask whether the district court gave a

---

[7] For these same reasons, Ramirez-Ayala's muddled attempts to characterize this sequence as violating his due-process rights fail.  See, e.g., Berrios-Miranda, 919 F.3d at 80-81; United States v. Molina-Marrero, 320 F.3d 64, 68 (1st Cir. 2003) (finding that the district court's reliance on facts alleged in a PSR to enhance the defendant's sentence did not violate due process because the defendant had access and could object to the PSR).

- 14 -

"plausible rationale" for the variance. See United States v. Ortiz-Pérez, 30 F.4th 107, 113 (1st Cir. 2022).

"In the sentencing paradigm 'reasonableness is a protean concept.'" United States v. Santiago-Lozada, 75 F.4th 285, 294 (1st Cir. 2023) (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). "An inquiry into the substantive reasonableness of a sentence must 'take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.'" United States v. Contreras-Delgado, 913 F.3d 232, 243 (1st Cir. 2019) (quoting Gall, 552 U.S. at 51). "We remain mindful that '[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes.'" Colón-De Jesús, 85 F.4th at 26 (alteration in original) (quoting United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011)). "Our task, then, is 'to determine whether the [challenged] sentence falls within this broad universe.'" Ortiz-Pérez, 30 F.4th at 113 (alteration in original) (quoting United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020)). When "a sentencing court imposes a variant sentence, that sentence must be explained, either explicitly or by fair inference from the sentencing record." Id. at 114 (quoting United States v. Montero-Montero, 817 F.3d 35, 38 (1st Cir. 2016)). "In making this determination, we look for the hallmarks of a substantively reasonable sentence: 'a plausible sentencing rationale and a

defensible result.'" United States v. Díaz-Lugo, 963 F.3d 145, 157 (1st Cir. 2020) (quoting Martin, 520 F.3d at 96).

Gleaning a "fair inference" from the record, we discern those hallmarks here. Montero-Montero, 817 F.3d at 38. The government argued for a twenty-four-months prison sentence based upon Ramirez-Ayala's repeated violations. Against this backdrop and with its explicit references to the applicable § 3553(a) factors, the district court thus reached its upward variance based on the nature and circumstances of Ramirez-Ayala's illegal gun possession and his supervised-release-violation history. We gather this from the court's reference to how he (1) jeopardized public safety with his firearm offenses and flight, and (2) disregarded the law with his string of supervised-release violations. Thus, "[w]e find nothing implausible about the district court's sentencing rationale[,]" Colón-De Jesús, 85 F.4th at 26-27 (affirming an upward variance imposed to punish a defendant's serial disregard of supervised-release conditions in committing another firearm offense), and recognize that sentencing a repeat violator who committed another gun crime and fled the police to a three-month variant sentence is within the realm of reasonable outcomes. See United States v. Cruz-Olavarria, 919 F.3d 661, 663, 665 (1st Cir. 2019) (affirming an upward variance to impose a maximum revocation sentence on top of a 120-month

sentence where, in part, the defendant committed another firearm offense while being on supervised release).

We also bear in mind that "[a] defendant who violates the conditions of his supervised release breaches the trust that the court has extended to him." United States v. Vélez-Andino, 12 F.4th 105, 118 (1st Cir. 2021) (citing United States v. Santiago-Rivera, 594 F.3d 82, 85 (1st Cir. 2010)). The district court implicitly accounted for how Ramirez-Ayala's third violation -- another firearm offense in a series of firearm offenses -- breached that trust when it noted the "seriousness" of his conduct and how he pled guilty to "similar conduct to his previous revocation." See Colón-De Jesús, 85 F.4th at 27; Díaz-Lugo, 963 F.3d at 157-58. Under these circumstances, an upward variance penalizing his recalcitrance is reasonable.

Ramirez-Ayala's further protest -- that the district court ought to have placed more weight on his arguments stressing mitigation and urging a lesser sentence -- rings hollow. "That the sentencing court chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable," Clogston, 662 F.3d at 593 (citing United States v. Anonymous Defendant, 629 F.3d 68, 78 (1st Cir. 2010)), nor does the fact that it did not sentence him "according to his counsel's recommendation." United States v. Mulero-Algarín, 866 F.3d 8, 13 (1st Cir. 2017) (quoting United

States v. <u>Butler-Acevedo</u>, 656 F.3d 97, 101 (1st Cir. 2011)). Rather, the district court showed that it considered Ramirez-Ayala's arguments and the relevant § 3553(a) mitigating factors when it said it did. <u>See</u> <u>United States</u> v. <u>Alejandro-Rosado</u>, 878 F.3d 435, 439 (1st Cir. 2017) (affording weight to a district court's explicit statement that it considered the § 3553(a) factors and heard the defendant's arguments). It then varied upward after accounting for the circumstances, deterrence, public safety, and the seriousness of the violation. <u>See, e.g.</u>, <u>id.</u> at 441 (affirming the district court for varying upward in a revocation proceeding where it highlighted these same factors). It did not abuse its discretion by taking that route.

## III. CONCLUSION

We need not tarry further. The district court is **<u>affirmed</u>**.