# United States Court of Appeals
## For the First Circuit

No. 16-2226

UNITED STATES OF AMERICA,

Appellee,

v.

ASHLEY FLORES-CARTER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Boudin, and Kayatta,
Circuit Judges.

Javier A. Morales-Ramos and Law Offices of Javier A. Morales-Ramos on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Thomas F. Klumper, Assistant United States Attorney, Acting Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, on brief for appellee.

May 18, 2018

**BOUDIN**, <u>Circuit Judge</u>. Between 2013 and 2015, Ashley Flores-Carter ("Flores") participated in a drug conspiracy involving the smuggling of cocaine from Puerto Rico to the continental United States. With kilograms of cocaine hidden in the lining of their suitcases, Flores and her co-conspirators traveled on commercial flights from Puerto Rico to several U.S. cities. On September 30, 2015, the government charged Flores with conspiracy to possess cocaine with the intent to distribute, 21 U.S.C. §§ 846, 841(a)(1), asserting that Flores's role in the drug conspiracy was two-fold: Flores herself flew from Puerto Rico to the United States with cocaine-filled suitcases; later, Flores recruited others to participate as drug mules.

Flores then made an incriminating post-arrest statement to the DEA, negotiated with the government, spent time in jail after bail was revoked, and received Jencks Act material, including grand jury testimony, 18 U.S.C. § 3500(b); <u>see also</u> Fed. R. Crim. P. 26.2. She then entered a straight plea of guilty without any agreement with the government. On September 7, 2016, Flores was sentenced to 84 months in prison, followed by five years of supervised release.

Flores presents three main arguments on appeal, ultimately seeking a remand for re-sentencing. First, Flores argues that at sentencing the government misled the district court as to Luis Pintor, one of Flores's thirty-six co-defendants who

had pled guilty pursuant to a negotiated plea agreement. In her post-arrest DEA interview, Flores had admitted to completing a drug-trafficking trip to New York with Pintor in early 2013. During Flores's sentencing hearing, the district court briefly inquired as to Pintor's sentence; the government responded that it believed Pintor received a 70-month sentence and stated: "[Pintor's] role within this conspiracy was even more limited than this defendant." The Court replied: "Oh, okay." Defense counsel then stated: "We don't believe so." The judge did not revisit the issue.

Conceivably, the sentence of another defendant, sentenced by a different judge but involved in some aspect of the same criminal enterprise, might in some instances matter to the district judge, were the judge sure of relative culpability. But many judges might think the game not worth the candle. The judge here apparently thought this since he made no finding and showed no interest in such a dubious detour. Rule 32, Fed. R. Crim. P. 32(i)(3)(B), calls on the court to resolve disputed material facts or say that the dispute does not matter, but neither side here invokes the rule with respect to this claim.

Further, defense counsel was apparently satisfied with the district court's disinterest in drawing any inference as to relative culpability and certainly did not oppose leaving the matter unexplored. Having failed to object to the judge's evident

intent to leave the disagreement unexplored, pursuing the matter now would require at the very least plain error. United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Defense counsel makes no such claim and nothing here would support a claim of plain error if one had been made.

The sentencing transcript confirms that the district court engaged in a proper and individualized sentencing. While the Presentence Report ("PSR") included a two-point enhancement for obstruction of justice based on Flores's messages to a potential witness, the court rejected this recommendation after hearing from both Flores's attorney and the government, stating: "I also considered that the texts as such are somewhat ambiguous . . . I don't believe that . . . the government proved by a preponderance of the evidence that the obstruction of justice should be granted."

The district court also considered the three different drug quantities proposed--48 kilograms in the government's sentencing memorandum, 8 kilograms in Flores's sentencing memorandum, and 41 kilograms in the PSR--before ultimately accepting the PSR's quantity. The judge gave due attention to disputes where they seemed to matter. A fleeting reference to a co-defendant and his sentence did not taint the sentencing hearing, especially when examined under the plain error standard.

Additionally, Flores says that both the PSR and the government's sentencing memorandum contained factual errors as to the quantity of cocaine properly attributable to her. The PSR concluded that she was responsible for at least 41 kilograms; the sentencing memorandum put the figure at 48. Both attributed to Flores the drugs handled by individuals she recruited. Under either calculation (41 or 48 kilograms), Flores's base offense level would be 32. U.S.S.G. § 2D1.1(c)(4)(2015). Flores's counsel argued for level 30, holding Flores accountable for 8 kilograms that Flores personally smuggled into the continental United States.

The district court held Flores responsible for the PSR's quantity: 41 kilograms. Flores's sentencing memorandum generally disputed the PSR's drug quantity of 41 kilograms but did not raise the argument that Flores now presents on appeal, namely, that the drugs smuggled by co-conspirators she recruited should not be counted. Rather, Flores argued (and still argues) over the number of trips she took carrying drugs, but not to an extent that would have reduced her base offense level below 32 given the amounts carried by her recruits.

Since Flores admitted to recruiting at least four individuals, and it was clear that the government's sentencing memorandum and the PSR considered Flores's recruits when calculating the drug quantity, we see no excuse for Flores's

failure to develop below the argument she now raises. Defense counsel argued that one putative recruit was not sufficiently recruited to count but never made the claim now advanced that true recruits should not be counted. The claim is forfeited and would not be rescued by a claim of plain error, if attempted.

At sentencing, the district court makes findings as to drug quantity under a preponderance of the evidence standard, United States v. Walker-Couvertier, 860 F.3d 1, 17 (1st Cir. 2017), and the court "has wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing." United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010). A participant in a drug trafficking conspiracy "is responsible . . . for drugs he himself sold, transported, or negotiated, as well as for drug quantities attributable to others that are reasonably foreseeable to him . . . ." Id. at 5 (alterations in original) (internal quotation marks omitted). The 41 kilogram figure is amply supported and unflawed by material error.

Finally, Flores argues that the district court did not, but should have, considered the grand jury testimony cited in her sentencing memorandum--testimony procured by Flores under the Jencks Act, 18 U.S.C. § 3500(b).

Shortly prior to Flores's scheduled trial, the government provided Flores with Jencks Act material, which

included the grand jury transcripts at issue.  18 U.S.C. § 3500(b);

see also Fed. R. Crim. P. 26.2.  After pleading guilty, Flores

used the disclosed grand jury transcripts to bolster various

arguments in her sentencing memorandum.  The government argued

that Flores's use of such material was improper since the

transcripts were provided for the sole purpose of potential use at

trial.  But the district court did consider the material.  Noting

that Flores's reliance was "unusual," the court stated that it had

reviewed her sentencing memorandum, which included citations to

the grand jury testimony.

Since the district court did consider the information,

the premise of Flores's argument is wrong and the argument fails.

Whether material secured under the Jencks Act can be used in

sentencing, or only for the assigned purpose of cross-examining

government witnesses, is a question which has apparently rarely

arisen and need not be pursued on this appeal.

**Affirmed**.