# United States Court of Appeals
## For the First Circuit

No. 17-1543

UNITED STATES,

Appellee,

v.

JORGE BERRIOS-MIRANDA, a/k/a Yoyo,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lynch, Thompson, and Barron,
Circuit Judges.

Raymond L. Sanchez Maceira on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Mainon A. Schwartz, Assistant United States Attorney, U.S. Attorney's Office, on brief for appellee.

March 22, 2019

**THOMPSON**, **Circuit Judge**. Today we turn to the final chapter of Jorge Berrios-Miranda's ("Berrios") sentencing challenge, in which he contends that the district court violated his procedural due process rights when it denied his request to challenge the reliability of his victim's testimony by cross-examining the victim at Berrios's resentencing hearing. Spying no error in the district court's handling of the matter, we affirm.

## Background[1]

We provide the following pertinent details to flesh out the backdrop for this appeal.

Berrios was one of several men who kidnapped and held hostage Luis F. Bello-Javier ("the victim") in August 2008. Over the course of the several days they held the victim against his will, the kidnappers regularly beat him and deprived him of food. After the FBI got involved, though, the kidnappers released the victim and were apprehended. Pursuant to a plea agreement, Berrios pleaded guilty to kidnapping for ransom in violation of 18 U.S.C. §§ 1201(a)(1) and (2).

---

[1] We draw the facts from the record before us on appeal, in particular the uncontested portions of the pre-sentence report ("PSR"), both in its original and amended form, the criminal complaint to which Berrios pleaded guilty, and the transcript of the resentencing hearing. See United States v. Lee, 892 F.3d 488, 490 n.1 (1st Cir. 2018) (citing United States v. Santiago-Serrando, 598 Fed. Appx. 17, 18 (1st Cir. 2015)); United States v. Talladino, 38 F.3d 1255, 1258 (1st Cir. 1994) (citations omitted).

One of Berrios's codefendants proceeded to a trial, during which Berrios's conduct during the kidnapping was described not only by the victim, but also by Berrios himself. The victim detailed how Berrios inflicted serious physical and psychological injuries on him during the abduction and "mistreated [him] the most." For his part, Berrios testified that he beat and threatened to kill the victim, and also placed his gun against the victim's head to intimidate him. Berrios also laid out how "constantly with the crowbar of the car [he] continued to torture" the victim, explaining that, "[t]he majority of the time, the one who was with [the victim] was me, Jorge Berrios."

This brings us to Berrios's sentencing proceedings (which postdate the codefendant's trial), in advance of which Berrios filed a motion requesting a copy of the as-yet-unseen-by-Berrios transcripts of testimony from his codefendant's trial. The district-court judge denied the motion, but relied upon the victim's and Berrios's trial testimony in rejecting the parties' recommended sentence, instead imposing a harsher sentence due to the fact that Berrios, according to the victim, had "mistreated [him] the most."

That led to Berrios's first sentencing challenge before this court, and we agreed with his position: "the record that was available to [Berrios] did not otherwise contain the information used by the district court in imposing the sentence," and the fact

that the victim testified that Berrios mistreated him more than anyone else was "both new and significant under our case law," so we held that the reliance below on the victim's testimony could not "be deemed harmless." See United States v. Berrios-Miranda, No. 13-1808 (1st Cir. June 19, 2015) (judgment).

Back in district court for the resentencing hearing, things didn't play out to Berrios's liking. After the district-court judge granted Berrios access to the transcripts "relevant to the mistreatment of the victim by [Berrios]" (the testimony given by the victim and by Berrios), Berrios moved to compel the government to produce the victim "to be cross examined by [him] during [re]sentencing, to contest [the victim]'s statement that Berrios was: 'the one who mistreated [the victim] the most.'" To hear Berrios tell it, the victim's statement, which was not previously subject to cross-examination at trial at all by Berrios, was "questionable." The district-court judge ordered Berrios to "explain how further questioning of the victim" would "challenge as inaccurate and unreliable" the testimony that Berrios's own statements had "essentially corroborated." Berrios wanted to challenge the reliability of the victim's statement that he was the worst of the tormenters: the victim had been blindfolded during much of the abduction and therefore could not always reliably identify his aggressors, plus certain details provided at trial had not come up during the victim's 2009 PSR interview. He

also hoped to elicit testimony that Berrios saved the victim's life. The judge denied the motion because cross-examination "would be a bald attempt to mount an attack to [the victim's] credibility" that "would only serve to further victimize him," and, in any event, Berrios was not entitled to cross-examine the victim -- he had all the relevant information he needed and "had a fair opportunity to comment on it or otherwise challenge" that information.

Ultimately, the district-court judge sentenced Berrios to a within-guidelines term of 136 months -- eight months less than the previous sentence. In so doing, the judge stated she had "carefully evaluated" Berrios's "conduct while the kidnapping victim was in his custody, as it was described at trial, not only by him but by the victim himself." As part of that, the judge found that Berrios was the one who "principally" held the victim and, based on the record, Berrios was responsible for "mistreat[ing] [the victim] the most." The judge also took into account Berrios's corroborative testimony: "I told him that if he screamed, that I was going to kill him"; "I placed [the gun] on his head"; "I intimidated him"; "[I] torture[d] him mentally."

And now here we are, entertaining Berrios's latest claim of error: he submits that his procedural due process rights were violated when the district-court judge denied him the opportunity to contest misinformation about his treatment of the victim during

the abduction by cross-examining the "unreliable" victim, and this led to the imposition of a sentence based on inaccurate information. Unlike his last sentencing challenge, this one fails.

**Standard of Review**

We review the sentencing court's interpretation and application of the sentencing guidelines de novo, the fact-finding for clear error, and the judgment calls for abuse of discretion. United States v. Acevedo-López, 873 F.3d 330, 335 (1st Cir. 2017) (citation omitted).

**Discussion**

Berrios's appellate contentions boil down to the argument that his procedural due process rights were trampled when the district-court judge gave the victim's testimony "full credibility" without affording Berrios the opportunity to cross-examine[2] the victim to demonstrate that the testimony was unreliable.[3] To drive home his point, he casts doubt on the

---

[2] To be clear: Berrios is using the term "cross-examine" very loosely. Because the government never brought in the victim to testify at the sentencing hearing, what Berrios actually means by "cross-examine" is his effort to compel the government to make the victim available at sentencing so that Berrios might probe the victim about testimony he gave at the codefendant's trial. This is not a classic "cross-examination."

[3] Berrios advances much of his procedural due process argument under the three-prong test set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), which we have never used to guide our analysis in this context. Because we dispose of his arguments on appeal under our controlling case law in this arena, as we discuss

testimony's reliability by comparing and contrasting it with the PSR: in the victim's 2009 interview for Berrios's PSR, the victim revealed that the kidnappers kicked him in the head daily, struck him with a wooden stick, and poured water on him, but these details do not appear in the victim's 2012 trial testimony. Berrios emphasizes that the victim accused Berrios of "mistreat[ing] [him] the most" for the very first time during the 2012 trial. He also presses that several kidnappers abused the victim, but with the victim often blindfolded, he could not have known who "mistreated [him] the most." Berrios submits that he should have been allowed to cross-examine the victim during his sentencing proceedings to zero in on all of this "questionable" information.

Unsurprisingly, the government disagrees.[4] Because procedural due process protections at sentencing are narrower than those prior to the establishment of a defendant's guilt, the government says that Berrios has no right to cross-examine the

---

in our primer, we need not weigh in on or employ his suggested framework.

[4] We pause to address a threshold argument advanced by the government: at his second sentencing, when Berrios accepted as true the district-court judge's factual findings -- telling the court through counsel that he had "come to terms with the [c]ourt's findings in the last sentencing hearing . . . that [Berrios] was the man who tortured the victim, and he has come to realize that" -- he waived any argument that he was not the person who mistreated the victim the most. However, because we can dispose of the case on other grounds, we assume favorably to Berrios that he has not waived his arguments.

victim at the resentencing hearing.  Berrios had advance notice of the trial testimony this time, as well as a chance to challenge it before he was sentenced.  Further, the government argues that it was proper for the district-court judge, in her substantial discretion, to consider relevant trial testimony at sentencing, including trial testimony given without Berrios there to cross-examine the person testifying.

**Primer**

At a sentencing hearing, neither the Federal Rules of Evidence nor the Sixth Amendment right to cross-examination apply, United States v. Bramley, 847 F.3d 1, 5 (1st Cir. 2017) (citing United States v. Rodriguez, 336 F.3d 67, 71 (1st Cir. 2003)), and sentencing judges may consider any evidence with "sufficient indicia of reliability to support its probable accuracy," United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010) (quoting United States v. Zapata, 589 F.3d 475, 485 (1st Cir. 2009)); see also United States v. Doe, 741 F.3d 217, 235-36 (1st Cir. 2013). Under this approach, the court has considerable leeway to rely upon "virtually any dependable information."  Doe, 741 F.3d at 236 (quoting Cintrón-Echautegui, 604 F.3d at 6).  This even includes "statements which have not been subjected to the crucible of cross-examination."  Acevedo-López, 873 F.3d at 340 (quoting Doe, 741 F.3d at 236).  That said, the lower court's discretion is not boundless and must comport with due process

demands and the parameters of Rule 32 of the Federal Rules of Criminal Procedure.[5]  Bramley, 847 F.3d at 5.  Indeed, due process requires that a defendant "be sentenced upon information which is not false or materially incorrect," id. (quoting United States v. Curran, 926 F.2d 59, 61 (1st Cir. 1991)), and "a defendant must be provided with a meaningful opportunity to comment on the factual information on which his or her sentence is based," id. at 6 (quoting United States v. Berzon, 941 F.2d 8, 10 (1st Cir. 1991)). See also United States v. Kenney, 756 F.3d 36, 49-50 (1st Cir. 2014); United States v. Rivera-Rodríguez, 489 F.3d 48, 55 (1st Cir. 2007).

## Analysis

Having reviewed the district-court judge's pronouncement of sentence -- which went down after she denied Berrios's request to first cross-examine the victim -- we see no error.  Berrios's procedural due process rights were not violated by the district-court judge's decision denying Berrios's request to cross-examine

---

[5] Rule 32 provides, in pertinent part, that the court must provide defendants "any information excluded from the presentence report . . . on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information." Fed. R. Crim. P. 32(i)(1)(B); see also United States v. Rivera-Rodríguez, 489 F.3d 48, 53 (1st Cir. 2007) (highlighting that the Supreme Court has instructed that Rule 32 "contemplates full adversary testing of the issues relevant to a [g]uidelines sentence and mandates that the parties be given 'an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence.'" (quoting Burns v. United States, 501 U.S. 129, 135 (1991))).

the victim because he had no right to do so: as we've already explained, there is no Sixth Amendment right to cross-examine at sentencing. Bramley, 847 F.3d at 5 (citing Rodriguez, 336 F.3d at 71). And Berrios had advance access to the PSR and transcripts of trial testimony (none of which were "new" or unknown to him by that point), as well as his "meaningful opportunity to comment on the factual information on which his . . . sentence is based" at the resentencing hearing, and that's all the due process required here. Id. at 6 (quoting Berzon, 941 F.2d at 9); see also Kenney, 756 F.3d at 50 (explaining that the lower court's reliance on testimony from the codefendant's trial was appropriate when the information was "hardly new" to the defendant and therefore could not have "taken [him] by surprise at his sentencing") (quoting Rivera-Rodriguez, 489 F.3d at 55); Rivera-Rodriguez, 489 F.3d at 55 (concluding that information could not be considered "new" or absent from the record when it had been set forth in the indictment, PSR, and plea agreement). In fact, the sentencing judge here really took pains to list the information upon which she was basing the sentence, which -- especially on the heels of our remand order -- tells us that she was acutely aware that Berrios needed to be informed about the information that would help her craft his sentence. See, e.g., Bramley, 847 F.3d at 8 (observing same).

And remember, as to the district-court judge's reliance on the victim's trial testimony, a sentencing judge, in her substantial discretion, can consider any evidence with sufficient indicia of reliability and can rely upon "virtually any dependable information." Doe, 741 F.3d at 236 (quoting Cintrón-Echautegui, 604 F.3d at 6). Here, the victim's testimony, given under oath, that Berrios "mistreated [him] the most" was corroborated when Berrios testified that "the majority of the time the one who was with [the victim] was me," and he testified in detail about the various ways in which he physically and psychologically abused the victim. See Acevedo-López, 873 F.3d at 340 (noting that reliability can be supported by corroborating evidence); United States v. Zuleta-Alvarez, 922 F.2d 33, 37 (1st Cir. 1990). Plus, the resentencing judge presided over Berrios's codefendant's trial, so she was already familiar with the issues and had been there to observe the victim's testimony and assess credibility firsthand. See Acevedo-López, 873 F.3d at 340-41 (citing Zuleta-Alvarez, 922 F.2d at 37). True, the victim may not have been cross-examined by Berrios or to Berrios's liking by counsel for the codefendant, but, as we've said before, "that is not fatal in and of itself." Id. (citing Doe, 741 F.3d at 236). Truth be told, even if the victim had not been cross-examined at trial, it would still be within the district-court judge's discretion, on this record, to consider the victim's testimony at sentencing. Id. at

340; see also Zuleta-Alvarez, 922 F.2d at 36; Cintrón-Echautegui, 604 F.3d at 6.

## Final Words

The last time this case was before us, we remanded it because the sentencing judge had relied upon information that had not previously been available to Berrios, and that had the effect of depriving him of the opportunity to comment on or otherwise challenge material information considered by the district court. But this time around, Berrios was aware of the testimony and he got his meaningful opportunity to address it during the resentencing. The district court committed no error in disallowing cross-examination of the victim at Berrios's resentencing. We affirm.