# United States Court of Appeals
## For the First Circuit

No. 19-2021

UNITED STATES,

Appellee,

v.

CARLOS HERNÁNDEZ-NEGRÓN,

a/k/a Once Dedos,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Howard, Chief Judge,
Kayatta, Circuit Judge,
and Casper,* District Judge.

Isabelle C. Oria Calaf for appellant.
James I. Pearce, Appellate Section, Criminal Division, U.S. Department of Justice, with Julia M. Meconiates, Assistant United States Attorney, W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, on brief, for appellee.

December 17, 2021

---

* Of the District of Massachusetts, sitting by designation.

**Casper**, <u>District Judge</u>.   Defendant-Appellant Carlos Hernández-Negrón ("Hernández") appeals his sentence of eighty-four months, claiming that the district court erred by quashing subpoenas issued to victims and by imposing a sentence Hernández challenges as procedurally and substantively unreasonable. Hernández also claims that the district court erred by not crediting the time he served in pretrial detention for related state charges that were subsequently dismissed.  For the reasons discussed below, we affirm the judgment.

## I.

On December 6, 2017, Hernández was named in a single-count federal indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The charge arose out of an armed home robbery which took place in Cidra, Puerto Rico on May 7, 2016.  Hernández was brought into federal custody on December 11, 2017.  At the time of his arrest, Hernández had been in state custody on local charges related to the May 7th robbery since June 29, 2017.  Although Hernández was detained under federal jurisdiction beginning on December 11, 2017, he remained under the primary jurisdiction of the state authorities until April 3, 2018, when the local charges were dismissed due to speedy trial violations.  Prior to dismissal, the Superior Court of Caguas held a preliminary hearing on November 9, 2017 and December 13, 2017 at which the two victims

- 2 -

of the robbery, Joan Cintrón Rivera ("Cintrón") and her husband, Ismael Fontánez Aponte ("Fontánez"), testified and were cross-examined by counsel for Hernández. During these proceedings, Cintrón testified, among other things, that Hernández "grabbed" her by the neck of her shirt and threatened to "blow [her] up" if she did not provide the combination to the safe in their home.

Jury selection for Hernández's federal trial was scheduled to begin on August 16, 2018, with trial set to begin on August 20, 2018. On August 16, 2018, Hernández pleaded guilty to the federal charge pursuant to a straight plea, admitting only the elements of the offense charged in the indictment. The United States Probation Office ("Probation") prepared a Presentence Report ("PSR"), which included the armed home robbery as part of the offense conduct. The PSR calculated a base offense level ("BOL") of fourteen under U.S.S.G. § 2K2.1(a)(6), which applies when a defendant is a prohibited person (i.e., a convicted felon) and possesses a firearm. Probation also applied two additional levels under U.S.S.G. § 2K2.1(b)(1)(A) because the offense involved three or more firearms and four additional levels under U.S.S.G. § 2K2.1(b)(6)(B) because the firearm was used or possessed in connection with another felony offense (i.e., the robbery). After applying a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), and a one-level reduction under U.S.S.G. § 3E1.1(b) for timely notifying

authorities of his intention to plead guilty, the PSR calculated a total offense level ("TOL") of seventeen. Based on the TOL of seventeen and Hernández's Criminal History Category ("CHC") of II, the PSR calculated the advisory guideline sentencing range ("GSR") to be twenty-seven to thirty-three months.

Hernández objected to the PSR on several grounds. Hernández argued, *inter alia*, that because he pleaded guilty only to the elements of the firearm charge, the PSR wrongly assumed he participated in the (uncharged) robbery. Hernández further argued that the Confrontation Clause gives him a right to cross-examine any witness whose testimony the government intended to use to establish he was involved in the robbery. Accordingly, Hernández subpoenaed Cintrón and Fontánez to testify at his sentencing, which the government moved to quash. Hernández claimed that due process required that the victims of the armed home robbery testify at the sentencing because credibility would decide his sentence. The district court granted the government's motion to quash the subpoenas, and the sentencing hearing was held the following day on September 11, 2019.

The government sought a sentence of one hundred twenty months' imprisonment, while Hernández sought a twelve-month sentence. At the sentencing hearing, the government stated that it would prove the relevant conduct to support the sentencing enhancements in the PSR. To that end, the government played

- 4 -

security footage of the site of the robbery, and called Agents Josian Rodríguez-Gonzalez ("Agent Rodríguez") and José Pedraza-Ortiz ("Agent Pedraza") as witnesses. The district court indicated that it had reviewed the transcripts of Cintrón's and Fontánez's testimony at the state preliminary hearing that the government had provided to the court. Agent Rodríguez testified that he prepared a photo lineup to show to Cintrón as part of the investigation, and that within two to three seconds of viewing the lineup, Cintrón identified Hernández as the person who threatened her during the robbery. Agent Pedraza, a lifelong resident of Cidra, testified that he had known Hernández for more than twenty years. During the investigation, Agent Pedraza was asked to view the security footage of the exterior of the victims' residence from the day of the robbery. The footage shows the perpetrators arrive at the residence in a blue vehicle and enter the residence. Later clips of the footage show the perpetrators place a safe box in the blue vehicle, fire shots toward a nearby business, get back into the car, and continue to fire shots as they flee the area in the blue vehicle. The security footage also shows Fontánez briefly approach the scene outside his residence before he retreats back to the area of the nearby business. The end of the footage shows Cintrón exit the residence as she is joined by Fontánez. Agent Pedraza testified that he immediately recognized Hernández as one of the perpetrators depicted in the security footage. For

his part, Hernández challenged the reliability of Cintrón's identification due to what he characterized as inconsistencies and argued that the government failed to meet its burden of establishing that he participated in the robbery.

Citing Cintrón's and Agent Pedraza's identifications of Hernández specifically, the district court found that Hernández participated in the armed home robbery. As to Cintrón's identification, the Court cited her identification of Hernández at the preliminary hearing in the state proceeding, which was made without hesitation. The Court dismissed any inconsistencies that Hernández sought to highlight in that testimony and concluded that this did not detract from the identification. As to Agent Pedraza's identification, the Court similarly noted the lack of hesitancy in his identification of Hernández from the security footage and other factors (which include having known him for over twenty years). The court noted that the BOL for the offense was fourteen and applied a two-level increase because the crime involved three or more firearms and a four-level increase because Hernández possessed the firearms in connection with another felony. As to acceptance of responsibility, the court granted a two-level, not three-level, reduction for same under § 3E1.1(a). Accordingly, the court calculated the TOL to be eighteen. Based on the TOL and a CHC of II, the advisory GSR was thirty to thirty-seven months.

Turning to the sentencing factors under 18 U.S.C. § 3553(a), the Court cited Hernández's personal history including that the 41-year-old was a resident of Cidra, had one child, attended school until the tenth grade, and although unemployed at the time of his arrest, had previously owned two food trucks. The Court cited his physical and emotional health, including an earlier history of substance abuse until 2006. The Court also recited his criminal history, noting, among other things, that this was his seventh conviction and that his prior convictions had included ones for robbery (in 1998, resulting in a sentence of eight years) and attempted robbery (in 2004, resulting in a sentence of four years). The Court also noted that after he committed the offense in this case, he absconded from Puerto Rico and was not arrested until June 2017 in Massachusetts, where he was charged as a fugitive from justice and later extradited back to Puerto Rico. Citing the seriousness of the offense in this case, and the need to promote respect for the law and public protection, the court concluded that a sentence above the advisory GSR was warranted and sentenced Hernández to eighty-four months' imprisonment, three years of supervised release, and a mandatory $100 special assessment.

Hernández objected to the sentence as procedurally and substantively unreasonable, arguing that the government failed to prove by a preponderance of the evidence that Hernández

participated in the robbery, and that the record did not support the sentence imposed. Additionally, Hernández requested that he receive credit for the time he spent in custody on the related state charges for relevant conduct prior to being taken into federal custody. Accordingly, the court ordered the parties to submit briefs on the issue. In their respective memoranda, Hernández and the government disagreed about whether he should receive credit for time served in state custody but agreed that it is the province of Bureau of Prisons ("BOP") to determine credited time, and they requested amendment of the PSR to include the relevant pretrial detention dates for such determination. Subsequently, the district court ordered the PSR be amended to reflect the relevant dates of pretrial detention (specifically, the December 11, 2017 date that Hernández was transferred to federal custody pursuant to writ of habeas corpus ad prosequendum; and the date that the state charges were dismissed on April 3, 2018), and entered its judgment. This appeal followed.

## II.

"We review criminal sentences imposed under the advisory guidelines regime for abuse of discretion." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). Within this framework, "we review issues of law de novo and findings of fact for clear error." United States v. Dávila-Bonilla, 968 F.3d 1, 9 (1st Cir. 2020). Applying this standard, we must determine first

- 8 -

that the district court committed "no significant procedural error" which, for example, might include an improper calculation of the GSR.  Gall v. United States, 552 U.S. 38, 51 (2007).  If the sentencing was "procedurally sound," we turn to the "substantive reasonableness of the sentence imposed" by "tak[ing] into account the totality of circumstances, including the extent of any variance from the Guidelines range."  Id.

**III.**

The district court's quashing of the subpoenas to Cintrón and Fontánez did not violate Hernández's due process rights.  "At a sentencing hearing, neither the Federal Rules of Evidence nor the Sixth Amendment right to cross-examination apply."  United States v. Berrios-Miranda, 919 F.3d 76, 80 (1st Cir. 2019) (citing United States v. Bramley, 847 F.3d 1, 5 (1st Cir. 2017)).  Accordingly, a sentencing court may consider any evidence with "sufficient indicia of reliability to support its probable accuracy."  Berrios-Miranda, 919 F.3d at 80 (quoting United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010)).  Still, the sentencing procedure "must comport with due process demands and the parameters of Rule 32 of the Federal Rules of Criminal Procedure."  Id.  Accordingly, a defendant may not be sentenced upon information that is false or materially incorrect, id., and "[a] defendant must be provided with a meaningful opportunity to comment on the factual information on which his or

her sentence is based," United States v. Rondón-García, 886 F.3d 14, 21 (1st Cir. 2018) (quoting United States v. Berzon, 941 F.2d 8, 21 (1st Cir. 1991)).

Here, it was disputed between the parties whether the court could find, based on a preponderance of the evidence, that Hernández possessed the firearm in connection with the robbery. Hernández argues that he was deprived of his due process right to confront witnesses when the district court quashed his subpoenas to the victims. "It is the government's burden at sentencing to prove sentencing enhancement factors by a preponderance of the evidence, and a district court may base its determinations on 'any evidence that it reasonably finds to be reliable.'" United States v. Lacouture, 835 F.3d 187, 189-90 (1st Cir. 2016) (quoting United States v. Almeida, 748 F.3d 41, 53 (1st Cir. 2014)). Regarding its burden of proof as to the sentencing enhancements, the government relied upon the prior testimony of both victims, security footage, and the live testimony of Agents Rodríguez and Pedraza. Even in the absence of a Sixth Amendment right to confront witnesses at a criminal sentencing, Hernández had the requisite meaningful opportunity to engage with the factual basis for his sentence provided by Cintrón's and Fontánez's testimony. The testimony, while not given at the sentencing, was given at the state preliminary hearing, during which these witnesses were subject to extensive cross-examination by Hernández's counsel.

Moreover, Hernández did not propose to the district court any material line of inquiry that had not already been explored with these witnesses in the state proceedings. Hernández had equal access to the transcript of the prior testimony, and he had a meaningful opportunity at the sentencing to proffer arguments regarding their reliability as witnesses and to cross-examine Pedraza, who provided his own identification of Hernández, and Rodríguez, who took the identification of Hernández from Cintrón. Accordingly, the district court did not abuse its discretion when it quashed Hernández's subpoenas.

**IV.**

Moreover, the upwardly variant sentence was both procedurally and substantively reasonable. Hernández argues that the government did not prove, by a preponderance of the evidence, that he participated in the armed home robbery, and therefore, it was procedurally unreasonable to apply the four-level sentence enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for the firearm being possessed in connection with the felony robbery. This argument is unavailing.

The district court did not clearly err when it applied the additional four levels because there was an adequate factual basis to find, by a preponderance of the evidence, that Hernández participated in the May 7, 2016 armed home robbery. The district court relied upon not only the eyewitness testimony from Cintrón

connecting Hernández to the robbery, but also Agent Pedraza's testimony that corroborated Cintrón's identification of Hernández. This evidence is sufficient to prove, by a preponderance of the evidence, that the firearm was used in connection with the robbery. We thus conclude that the district court did not clearly err in applying the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

Relatedly, we also conclude that the court did not err in applying the two-level enhancement for the involvement of three or more firearms under U.S.S.G. § 2K2.1(b)(1)(A). Security footage, together with eyewitness testimony from Fontánez, adequately proved, by a preponderance of the evidence, that at least three firearms were involved in the May 7th robbery.

Although not addressed expressly during the sentencing, we further conclude that declining to grant Hernández the additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b) for timely notifying authorities of his intention to plead guilty was not clearly erroneous. Indeed, U.S.S.G. § 3E1.1(b) "is available only to defendants who accept responsibility early enough to save the government the time and expense of preparing for trial." United States v. Garrasteguy, 559 F.3d 34, 38 (1st Cir. 2009). This one-level reduction is available to a defendant who qualifies for a two-level reduction under U.S.S.G. § 3E1.1(a), has an offense level of 16 or above and "upon motion of the government" that

defendant has "timely notif[ied] authorities of his intention to enter a plea of guilty." U.S.S.G. § 3E1.1(b). Here, the government noted that Hernández pleaded guilty one day before jury selection was set to begin, and took the position below that Hernández should not receive any reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) (for his failure to accept responsibility for relevant conduct) or § 3E1.1(b) (for his failure to notify the government timely of his intention to plead guilty). As the district court allowed the two-level reduction under U.S.S.G. § 3E1.1(a) and Hernández's appeal concerns only the one-level reduction not given under U.S.S.G. § 3E1.1(b), we confine our discussion to this latter issue.

Although Hernández objected to the government's position below regarding no reduction for acceptance of responsibility, he did not squarely object to the district court's declining to award the one-level reduction under U.S.S.G. § 3E1.1(b). Accordingly, we review only for plain error. United States v. Serrano-Mercado, 784 F.3d 838, 844-45 (1st Cir. 2015). Such argument fails on plain error review, but even assuming *arguendo* that he had preserved this claim, it also fails under the abuse of discretion standard. The entry of Hernández's guilty plea one day before jury selection was not timely under U.S.S.G. § 3E1.1(b), where the timing of same did not permit the government to avoid trial preparation as this provision contemplates. See United States v.

<u>Arango</u>, 508 F.3d 34, 41 (1st Cir. 2007) (affirming denial of one-level adjustment under U.S.S.G. § 3E1.1(b) where defendant pleaded guilty five days before the start of trial); <u>see also</u> <u>United States v. Donovan</u>, 996 F.2d 1343, 1345-46 (1st Cir. 1993) (per curiam) (concluding district court did not clearly err by denying additional one-level reduction when defendant pleaded guilty on the eve of the second trial date).  By the time that Hernández indicated that he would enter a guilty plea, the case had been set for trial, and the government had filed several motions in limine, responded to Hernández's motions in limine, designated an expert witness, and filed proposed jury instructions and jury voir dire questions.  The timing of Hernández's plea did not allow the government to avoid this necessary trial preparation or the district court "to allocate [its] resources efficiently," another consideration under U.S.S.G. § 3E1.1(b).  Accordingly, the district court did not err in declining to deduct a third level for acceptance of responsibility from the TOL.

Having concluded that his sentence was procedurally sound, we turn to Hernández's claim that his sentence is substantively unreasonable.  This argument also fails.  The thirty to thirty-seven-month GSR is "advisory" rather than mandatory, and, accordingly, "the GSR is not controlling on the question of the substantive reasonableness of a particular sentence."  <u>United States</u> v. <u>Gates</u>, 709 F.3d 58, 71 (1st Cir. 2013).  Still, the

Court must consider the GSR as part of its review of the reasonableness of the sentence.  Id.  Here, we stated that the district court had considered all the sentencing factors set forth in 18 U.S.C. § 3553(a).  "Such a statement is entitled to significant weight."  United States v. Santiago-Rivera, 744 F.3d 229, 233 (1st Cir. 2014) (citing United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010)).  More importantly, the district court explained the reasons for the "steep upward variance" that it imposed here.  United States v. Díaz-Lugo, 963 F.3d 145, 157 (1st Cir. 2020).

As to the § 3553(a) factors other than the advisory GSR, the district court noted that Hernández has a long criminal history, involving multiple convictions and multiple terms of imprisonment, and culminating in this armed home robbery.[1]  As the district court also recited, after committing this crime, Hernández absconded from justice for a year before he was apprehended.[2]  Moreover, Hernández's commission of the crime of

---

[1] Given the details of Hernández's criminal record that the district court highlighted in explaining his sentence, "it is safe to say that the judge implicitly found that the defendant's criminal history score substantially under-represented" his past criminal acts.  See United States v. Santiago-Rivera, 744 F.3d 229, 233 n.3 (1st Cir. 2014); see also United States v. Laboy-Nadal, 992 F.3d 41, 44 (1st Cir. 2021) (noting that "a variance analysis may 'echo' a departure consideration" (internal citation omitted)).

[2] To the extent that Hernández now objects to the district court's reliance upon this matter, he failed to object to such reliance below and, even on appeal, his failure to develop this

being a felon in possession of a firearm involved an armed home robbery in which Hernández fired his weapon before fleeing the scene. The district court expressly found that the nature of his involvement in the robbery, which included violent "threat[s]" to Cintrón and "reckless behavior" in discharging his weapon, made Hernández's case different from the "typical felon in possession case." See United States v. Bruno-Campos, 978 F.3d 801, 806 (1st Cir. 2020); United States v. Guzman-Fernandez, 824 F.3d 173, 177-78 (1st Cir. 2016). Although the eighty-four-month sentence imposed by the district court is significantly higher than the advisory GSR, the balance of Hernández's crime and the other § 3553(a) factors reasonably justified a higher sentence, even as the district court did not impose the 120-month sentence, the statutory maximum sentence, that the government recommended.[3]

---

argument amounts to waiver. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (noting the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Even under plain error review, this claim fails where the undisputed record was that he was arrested in Massachusetts on June 29, 2017 and subsequently extradited to Puerto Rico on an outstanding fugitive arrest warrant, which, unlike United States v. Marrero-Pérez, 914 F.3d 20, 24 (1st Cir. 2019) (finding plain error where sentencing court relied upon multiple, prior arrests "without some greater indicia of reliability that the conduct underlying the arrest took place" or corroborating evidence of same), is sufficient basis for the district court's limited reference that he had "absconded from justice."

[3] To the extent that Hernández intended to challenge the upward variance not just on the ground that it was substantively unreasonable, but also that it was procedurally unreasonable, this latter argument also fails. We recognize that the "farther the

Díaz-Lugo, 963 F.3d at 156-58. Therefore, we conclude that the sentence imposed by the district court is substantively reasonable, given all of the § 3553(a) factors.

**V.**

Having affirmed Hernández's sentence for all the reasons discussed above, there is one remaining issue related to the record submitted to the BOP for credit for time served for his prior state imprisonment. "The Bureau of Prisons, and not the courts, determines when a defendant's sentence starts and whether the defendant should receive credit for any prior time spent in custody." United States v. Montez-Gaviria, 163 F.3d 697, 700-01 (2d Cir. 1998); see United States v. Morales-Madera, 352 F.3d 1, 15 (1st Cir. 2003) (similar). Hernández conceded that it is for the BOP, not the district court, to decide whether he should receive credit for his state pretrial detention. To the extent that Hernández has preserved any objection to the district court's failure to credit his pretrial detention, such matter is for the BOP, not the court, to resolve where, as here, Hernández's time in state custody was for pretrial detention, governed by 18 U.S.C. § 3585, and not an undischarged term of imprisonment or anticipated

judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer." United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006) (omission in original) (quoting United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005)). For all of the reasons explained above, such argument is not persuasive here.

state term of imprisonment, U.S.S.G. §§ 5G1.3, 5K2.23, as Hernández concedes in his brief. See Morales-Madera, 352 F.3d at 15.

Nevertheless, both parties agreed that the information regarding the time Hernández spent in state custody should be included in the PSR. The district court agreed and ordered that the PSR be amended to reflect the relevant dates. Although Hernández reports that the PSR has yet to be amended in this fashion in accordance with the district court order, the district court has already issued the order that the parties sought so that the PSR (which already included the date of his arrest on the state warrant, June 29, 2017) would also include the date he was brought into federal custody, December 11, 2017, and the date the state charges were dismissed, April 3, 2018, for the purposes of the BOP calculating any additional credit for time served. Accordingly, no further action is warranted by this Court.

## VI.

For the foregoing reasons, we **affirm** Hernández's judgment.